The 4th District Appellate Court of the State of Illinois has now convened. The Honorable John W. Turner presiding. Thank you. Good afternoon. We are here on Hundman versus State Farm Bank and others. That's case number 4-2-2-0-6-0-0. Will counsel for the appellate please identify yourself for the record. Yes, Your Honor. Jonathan Backman representing Lawrence Hundman. Thank you. And counsel for appellate please state your name for the record. Jay Scholl representing the appellate. Thank you. Mr. Backman, please proceed with your argument. Thank you, Your Honor. Your Honors, I think the briefs, oops, I'm sorry. I think the briefs in this case laid out nicely what the issues are. But let me just start with a, it's a fairly, let me start with may it please the court. I apologize. I'm a little thrown by my computer not working and having to switch computers at the last minute, but I'm prepared now. I, the background facts of this case are somewhat complicated. The issues before Your Honors today, I think are fairly simple. And frankly, I'm surprised to be before you today because I anticipated when we filed this case that we'd be following up with a motion for summary judgment on the issue of liability fairly quickly. And instead we're appealing a dismissal. Very simply the dismissal is based, and I won't talk about the motion to reconsider and the motion for me to amend to start. I think it's significant and I may get there, but I think on its face, the complaint clearly states a claim. Our allegations very simply are that in roughly January of 2011, the, and let me step back. In 2008, there was the loan that's at issue here was given. Mr. Hunman, and it was an investment with a number of people. Mr. Hunman posted an accommodation mortgage, essentially a mortgage of his own property, because State Farm Bank had decided at the time that the borrowers' assets, the extant properties were not sufficient, didn't provide sufficient collateral. Now, they did have guarantees from each of the individuals, but they still wanted more collateral. So they took the Westport property, which belonged to my client, and another accommodation mortgage, which was the mortgage of, I forget the name of the entity now, but it was a Clearwater property. Counsel, I have a question before you get any further into just giving us the facts. I don't understand this whole concept of pre-negotiation agreement. I can't say that I've ever seen one. And I don't understand why CIP and State Farm can't just do oral negotiations. And then if they do reach an agreement, put it into writing. And so what's the idea about pre-negotiation and why that would have to be an agreement? And why couldn't CIP and State Farm just negotiate between themselves until they reach an agreement and not include Hudman at all? Well, and that's an excellent question. But the reason, Judge, was this, was that in October of 2010, Nuckstruck, another entity owned by an entity owned by Mr. Stark and Mr. Owen, they purchased the property, the extant properties, the principal collateral here, and they assumed the liability. But they didn't get State Farm Bank's agreement to that. They just assumed the liability. So you had this odd situation where Nuckstruck, an unrelated party, was principally liable for the loan, although not directly to State Farm Bank. CIP, the borrower, remained liable. But Nuckstruck was really liable because they had committed to CIP that if CIP had to pay, Nuckstruck would pay CIP. So you had this odd situation. And Nuckstruck, that is Mr. Stark and Mr. Owen, went to State Farm and said, we'd like to negotiate with you directly about this loan. But State Farm had concerns. They had concerns that if they did that, that they could wind up violating the guarantees and the under-guarantee law. If they just wouldn't talk to the other, if they were negotiating with Nuckstruck, a non-party, about this loan. I mean, could they have done it? They may have been able to, but State Farm insisted on an agreement that everybody would sign, including Mr. Hunman and all the guarantors. And that would specifically say, and specifically authorize State Farm Bank to negotiate only with the Nuckstruck representatives. But the guarantors and the grantors, that is Mr. Hunman, would agree that that would be okay. It would be okay that they speak to Mr. Hunman, that the negotiations would occur solely between them. Was it necessary or not? Honestly, I don't know. What I know is that State Farm felt it was necessary. So as alleged in the complaint, State Farm felt it was necessary and they entered into the agreement. And Mr. Hunman had concerns. He had concerns about... Mr. Backman, could I follow up on that question? Sure. If the loan resolution agreement that was ultimately reached in this case had been reached and there was not a pre-negotiation agreement, do you agree that your client would have had no standing to object to it? No, it would have depended. I mean, I don't know, and I haven't frankly examined that issue. I think there would have been defenses under the guarantees. There could have been defenses under the guarantees and there could have been defenses under the mortgages. Why wouldn't there still be? I'm sorry, why wouldn't there still be? If there are defenses irrespective of the pre-negotiation agreement, why wouldn't those defenses still exist? Well, they might have, but in the litigation that ensued, the defendants for Mr. Hunman and other involved parties didn't feel like they would prevail. Okay. And therefore, settled. It's possible they could have... I mean, remember that litigation went from 2013 to 2021 and unfortunately it appeared Mr. Hunman was going to lose and he settled and got some benefits out of the settlement, but you know... So let's return to what the pre-negotiation agreement adds to your client's rights. First, tell me about subparagraph Q. Isn't that entirely for the benefit of State Farm concerning requirements that it may impose in its sole and absolute discretion and receipt of evidence in a form satisfactory to it, State Farm? It doesn't look like there's a right for anybody in that paragraph on State Farm. Oh, no, actually there is, Your Honor. And that paragraph said that the State Farm would not consummate any agreement. No, we're talking about Q, correct? Yes. And under... It doesn't seem to guarantee anything. Well, no, I know it's hard to... Because it's a convoluted paragraph and I would refer your honors to the reply brief where I took out the extraneous language because the problem is AQ captures a lot of things. It does give State Farm with sole and absolute discretion whether to enter into an agreement. But then it says if it's going to enter into an agreement, it is going to obtain the specific authority and Judge Foley agreed with this, the specific authority of each of the guarantors and grantors before consummating that agreement. It absolutely had the sole discretion whether to enter into an agreement. Do you allege that there was a failure to meet State Farm's requirements as to the specific authority? Well, yes, because they didn't even tell Mr. Hunman about it and they didn't get any authority for Mr. Hunman to go forward. And isn't that their choice, right? They can require what they wish. No, I don't think so because the language was they would obtain the specific authority of all of the parties or all the grantors and guarantors before they consummated. And although the form of the specific authority would be in their discretion and didn't have to be in writing, the form and substance would be in their discretion. They had to get his authority. I mean, that was the language and that was certainly a reasonable reading of that provision. And remember, Your Honor, they drafted this. They drafted this provision and Mr. Hunman, in reading the provision, had good reason to believe that before State Farm would consummate an agreement, it would obtain some form of specific authority. They would let him know. And so my question is, isn't this something which the trial court addressed that said, were you equating authority with they must seek specific approval of your client? Isn't that your argument? Well, my argument was that, and this is where we got confused with the judge's ruling. The judge agreed that the provision required Mr. Hunman's authority. The judge ruled that authority is different than approval. Going back to my question, isn't that what you are arguing to us, that this language about authority really meant that your client's specific approval was required? Yes, and... If we disagree, do you lose? What's that? If we disagree with your claim that authority should be read as requiring approval, do you lose? I think when it comes to Mr. Hunman, yes, that essentially the authority there was effectively approval. And I can expect... But if we disagree with that argument... Well, but if you disagree, we don't lose. Counsel, let me finish. The reason we don't lose... I'm sorry. I'm talking over you. Let me restate my question. If we disagree with your claim that authority essentially means Mr. Hunman's specific approval had to be obtained, do you lose? We lose under age care. If you find that or thought that... I mean, I think essentially you're saying if you find that nothing was required from Mr. Hunman, do we lose? And I think yes, under 8Q. But then you turn to 8S, and 8S is more specific because 8S says that in the case of a definitive agreement, State Farm will obtain the written consent of all guarantors and grantors to the definitive agreement. And there, Judge Foley ruled against us based on a reading of... That was some thin air in a sense. It tied back to the provision of Section 4. But there was no... I mean, Mr. Hunman's understanding of definitive agreement is certainly a reasonable one. And I can talk about the principal argument or a significant argument about the 2619 argument of the bank was that Section 4 negated, nullified Sections Q and Sections 8Q and 8S, which is just not true. It absolutely didn't. The pre-negotiation agreement contained these two sections that were supposed to provide, or Mr. Hunman understood them provide protection to him in the event. Now, again, I think the reason the dismissal came too soon is because you need to understand the negotiations, the discussions that occurred that led up to this agreement. And maybe that does get you to the second count, the breach of good faith. Mr. Bachman, doesn't the agreement have an entire agreement clause? So we can't look at the negotiations that led up to it. Oh, no. Right. But you can in interpreting an ambiguous agreement, right? I mean, and certainly the term definitive agreement is term. So you certainly could, the trial judge would have to, or very well could, take evidence on what did a definitive agreement mean to the parties. Do you rely on some authority to say that that overrides the integration clause? Well, I don't know that it overrides it, but in the settled case law of contractual interpretation, if you have an ambiguous provision, then an entire agreements clause doesn't mean you have to just say, well, then there's no contract because it's ambiguous. You look to a plural evidence to determine what the meaning was. And if you can't determine it, it becomes a question of fact. An entire agreements clause does not negate that. An entire agreements clause negates putting in parole evidence to try to change the language, the clear language of an agreement. We're not doing that. We're saying, I'm saying that both AS and HQ are ambiguous in what was required. And I can explain, I understand why we've moved to AS because of your question. If I agree with you on HQ, then do we lose? And I say no, because you still have to look at AS, which is clearly ambiguous. That needs to be, the court needs to determine what a definitive agreement is. But I want to explain, I don't believe we lose under HQ. If you notice that the name of AS is approval of the parties. And certainly my colleague is correct that paragraph N says that the headings don't matter. But there is an explanation for why they use the term authority rather than approval in HQ. I have a question I wanted to ask you about. After the trial court ruled your petition for reconsideration, is my understanding correct that in that petition you submitted all kinds of additional materials and arguments that initially submitted with the materials in opposition to the defendant's motion to dismiss? No, your honor, I only know that was a mistake. There was only one document I attached, which was going to be a document that was part of my proposed amended complaint. But I also pointed to it, but I did not, I had referenced that document in the original complaint. I only attached it because it made clear that judge Foley had erred in thinking that the, in thinking that the loan resolution did not modify any of the loan documents. It actually did. And we had alleged that, but not clearly in the original complaint. So we expanded on it in the amended complaint, and I attached that agreement, but really that agreement was not to add a document. Judge Foley could have ruled on the motion to reconsider without looking at that document. The point was because judge Foley's 2619 ruling said we had failed to allege an agreement that original loan, that we were saying, no, no, no, there was a document that did that. We did reference it actually in the original complaint. We hadn't expanded on it in the original complaint because we didn't think we needed to, but certainly you would allow one amendment, right? If the judge's ruling is that we failed to allege something, you would allow one amendment early in the case before there's been any discovery, you would allow an amendment. And I could have not attached the document, but merely pleaded what the document said. The only other attachment to the motion to reconsider was the proposed amended complaint that went to the motion for leave to amend that added the count too. So no, I didn't submit significant documents as part of my motion to reconsider. Mr. Backman, you are out of time, but you will have rebuttal. Okay, thank you. Mr. Scholl, would you proceed with your argument now, please? Yes, your honor. Thank you and good afternoon. May it please the court. My name is Jay Scholl and I represent the appellees in this case, which are State Farm Bank and State Farm Mutual Automobile Insurance Company. Although complicated greatly by Mr. Hudbin, this case raises fairly straightforward principles of interpreting an agreement called a pre-negotiation agreement that was between State Farm and an entity called CIP LLC. At the time, there were two loans made by State Farm to that entity that were in default. So the parties entered into that pre-negotiation agreement for the purpose of trying to simplify and facilitate negotiations. The pre-negotiation agreement provided that the loan agreements would remain in full force and effect, absent a written agreement modifying, waiving, and or amending those documents. Counsel, let me stop there. Why did you include Hundman in that agreement, pre-negotiation agreement? Why was that necessary? I don't understand it. It seems to me by including Hundman, it raises what we have now, litigation, whether Hundman needed to be notified or give consent or authorization. Well, in your honor, I would note that Mr. Hundman is actually not a party to the pre-negotiation agreement. The only parties are State Farm as the lender and CIP LLC as a borrower. I think that including the was just simply done out of an abundance of caution so that they were aware of these negotiations so that, you know, in an attempt to avoid issues down the road, it turns out perhaps it complicated and added issues. But I think that was why. Mr. Hundman was not actually a party to the agreement, but he was asked to sign it acknowledging that the agreement existed and these negotiations were taking place. Okay. You can move on with your argument, but I'm not sure I understand that concept that he's not a party, but his signature is required. It seems like a little inconsistent there, but while I'm probably interrupted, Jim, I might as well ask another question that I have. You had indicated in your brief that the negotiations did not result in any agreement modifying, waiving, or amending the terms, conditions, or provisions of the loan documents. But how do you justify that statement giving the loan resolution? Well, your honor, the loan resolution did not modify the loan documents. All that loan documents. Frankly, I don't think that loan resolution could have amended the loan documents given that CIP LLC was not a party to that loan resolution. Okay. Well, I get your answer, but the term definitive agreement has been an issue in this case. Why wouldn't the loan resolution be considered a quote definitive agreement end quote? Well, I think there's two reasons for that, your honor. Number one is because when you look at the language of that section 8S, it refers to any definitive agreement between the parties and parties is capitalized and parties is defined at the beginning of the agreement to mean State Farm Bank and CIP LLC. So by that alone, this could not have been an agreement that would have triggered the loan resolution, could not have been an agreement that would have triggered the section. In addition, if we're going to look at what exactly does a definitive agreement mean, if we look throughout this pre-negotiation agreement, it describes the type of agreement that the parties anticipated and hoped would result from these negotiations. We find references to this in sections 2, section 4, section 5, section 8. For example, in section 2, it speaks about the negotiation shall be preliminary in nature and shall not be binding on either party absent or written agreement executed by both parties and all guarantors, if applicable, modifying, waiving, or amending the terms, conditions, or provisions of the loan documents. Again, we see in section 4, it says absent any written agreement executed by both parties and any guarantor, if applicable, modifying, waiving, and or amending any terms or conditions of the loan documents, the loan documents shall remain in full force and effect in accordance with their terms. Section 5 preserves the existing rights under those loan documents. It said that no negotiations or other action taken pursuant to this agreement shall constitute a waiver of the rights of either party in connection with the loan or under the loan documents, except to the extent specifically stated in any written agreement that may hereafter be executed by both parties, again, capitalized, defined term parties, and if applicable, any guarantors. And finally, in section 8G, it similarly preserved these existing rights and talked about the kind of definitive agreement that the parties hoped would result from these of any kind to enter into any negotiations or to agree to any restructuring of the loan or loan documents or any modification, waiver, or amendment thereof, or to forbear from exercising any of its rights and remedies thereunder. So throughout the document, there is this common theme of the parties entering into these negotiations with a goal of finding some parties. Ultimately, that didn't happen, and that's why State Farm entered into this loan resolution, again, not between the parties, and we don't believe it was a definitive agreement because it did not do anything to modify, waive, or amend the terms of those loan documents. So Mr. Hunman now claims that this assignment violated the pre-negotiation agreement, and as you referenced in Mr. Bachman's presentation, he's relying on sections 8Q and 8S. One of those sections, I agree, is entirely for the benefit of State Farm. Section 8Q simply provides that any modifications, waivers, or amendments or other agreements in connection with the loan entered into by State Farm are conditioned upon State Farm's satisfaction that applicable parties entering into those agreements had authority to do so. The other section 8S requires consent of the guarantors to the loan, but only in the event it's a definitive agreement as between State Farm and CIP, LLC. As the trial court correctly concluded, nothing in the pre-negotiation agreement precluded State Farm from exercising its pre-existing right to assign the loan, and for that reason the loan was dismissed. So in our motion to dismiss, we have two basic questions. Number one was whether State Farm's receipt of a payment on a loan and or assignment of a mortgage were prohibited by those sections 8Q and 8S. Because they did not, we argued that the complaint had to be dismissed under section 2615. We also raised the second question, whether State Farm's pre-existing right to accept payment and assign the Westport mortgage were modified by the pre-negotiation agreement. Because they were not, we argued the complaint had to be dismissed under section 2-619. What's the affirmative matter, counsel? We felt that because the mortgage was not attached to the complaint, that out of an caution, we should attach that mortgage, bring it into evidence so that the court could see there is no prohibition in this mortgage against assignment. So we felt that we needed that to establish that pre-existing right to assign the mortgage. So you're presenting the affirmative matter and then dismissing it? 2-619 says, as this court has explained, yes, you've stated a cause of action, but you lose because of some affirmative matter. Now you're assuming, now it's assuming for purposes of that motion that the plaintiff has stated a cause of action. But when you move on to 2-619 to dismiss, based upon affirmative matter, I'm always wondering, in this case, what's that going to be? What's the affirmative matter that defeats the otherwise, assuming the argument, no good complaint? Yeah, yes, your honor. And I think the answer to that question is, I mean, it is an alternative argument. I mean, we are arguing, and we don't believe that the plain language of the pre-negotiation agreement gives rise to the claims that have been brought for breach of contract. That's a 2-615 argument. So what argument? We accept it, so what? You haven't stated a claim. But my sympathy is with the trial court. I see this a lot where counsel says, gee, I can make a motion to dismiss under 2-615, and there's also 2-619. So let's do that as well, even though, as I'm asking you now, you don't seem readily able to identify the affirmative matter, which is a requirement under 2-619. And I think the answer to your question, your honor, is we are in our 2-619 portion of this. We are saying, okay, even if, for example, Section 8Q required what it is Mr. Bachman is suggesting, the type of action that was taken by State Farm assigning the mortgage is a legal right that it had under the mortgage that it was exercising. Because it had the legal right to take that action, the complaint would have to be dismissed nonetheless. Well, again, my sympathies are with the trial court, because this explanation you just gave is clearly a so what explanation under 2-615, and it appears to me you don't have a 2-619 argument. It's not necessarily the case that you need one, if the case is properly dismissed under 2-615, but it's a disservice to the trial court, and frankly to this court, to be making motions to dismiss which don't fit. But go ahead, counsel. Thank you, your honor. With respect to the 2-615 motion, a plaintiff must allege facts that would constitute a breach of an agreement, and the failure to do so warrants dismissal under 6-2-615. The first section, Section 8Q, says that the consummation of any modifications, waivers, amendments, or other agreements that State Farm may, in its sole and absolute discretion, choose to enter into, if any, in connection with the loan, will be expressly conditioned upon State Farm's receipt of evidence, in a form and substance satisfactory to it, of the specific authority of all applicable parties. Mr. Hunman stretches to read this language to create an additional right in his favor, requiring State Farm to obtain his approval of any action it might take with respect to the loan. Specifically, Mr. Hunman takes great lengths to work in the word approval. He refers to that, uses that word, 24 times in his opening brief, 10 times in his reply brief. However, this section speaks in terms of authority. Approval is nowhere mentioned in the body of the section, or in the other section relied upon by Mr. Hunman. What Section 8Q actually says that is, if State Farm agreed to any modifications, waivers, amendments, or other agreements with respect to the loan, it had the right to require evidence of authority of a party entering into those agreements. Authority is the right of permission to act on another's behalf. Approval is to give formal sanction. These are two very different actions. One authority focuses on the right of an individual to act. The other approval focuses on the actual agreement itself. You can have one without the other. Someone could offer their approval of an act, but not have the authority to do so. Section 8Q did not require State Farm to obtain Mr. Hunman's approval before accepting payments on any loans, nor did it require Mr. Hunman's approval before assigning the loan documents. Accordingly, Mr. Hunman failed to allege a breach of Section 8Q. And so I asked Mr. Bachman if we agree with the trial court that this language about authorization does not equate with the need for approval of his client, does he lose? And he explained, no, he doesn't. Went on to say otherwise. Is it your position that if we were to reach that agreement, that's the end of this case and he loses? Mr. Hunman has also relied on a second section of the pre-negotiation agreement. So certainly, if you agree with our interpretation and the trial court's interpretation, it takes out one of their initial prongs, their alleged breach of Section 8Q. I think that would still leave Section 8S. But with that said, it's our position that even if the court felt that this pre-negotiation agreement required Mr. Hunman's, you know, evidence of Mr. Hunman's consent, the other affirmative matter that we have raised, State Farm's pre-existing right to make an assignment of the mortgage would defeat the complaint. So turning to the second section relied upon by Mr. Hunman. Well, let me follow up on that. Based upon your response and based upon Justice Steigman's previously stated concern about the mortgage, which allowed the assignment not to be an affirmative matter, do you lose under Q or BS? No, Your Honor, because there's nothing in Section 8S does not modify that mortgage. The Section 8S does not modify any of the terms of any of the loan documents. And it particularly does not modify the right of State Farm to be able to assign that mortgage, even without Mr. Hunman's consent. Well, then why do you concede that 8S might state a claim even if 8Q does that? Well, we wouldn't concede that, Your Honor. We don't think that it does. That's what you were telling me just a moment ago, and I frankly don't understand. Yeah, and I apologize for any confusion, Your Honor. We certainly do not concede that Section 8S would give rise to a cause of action, particularly because there was no agreement between the parties, namely State Farm and CIP. And secondly, there was no definitive agreement. So it flatly did not apply here to the right that Mr. Hunman would like to create for himself. So moving on with respect to Section 8S, as I've noted, it applies between the parties that was defined to mean State Farm and CIP. Mr. Hunman has not alleged any such agreement. Despite his last-minute attempt to attach an agreement, even that agreement itself is not between State Farm and CIP. And I've already been through in some detail the portions of the pre-negotiation agreement that speak to the type of definitive agreement that were contemplated. So like Section 8Q did not require Mr. Hunman's approval, Section 8S does not require State Farm to obtain Mr. Hunman's consent before accepting payment on any loans, nor did it require Mr. Hunman's approval before assigning the loan documents. So for those reasons, Mr. Hunman failed to allege a breach of Section 8S, and his complaint was properly dismissed under Section 2-615. We believe the trial court properly dismissed the complaint for its many defects. Section 8Q did not require approval of Mr. Hunman before accepting any payment and assignment of a loan. Section 8S did not require Mr. Hunman's consent because there was no agreement between State Farm and CIP. Section 8S did not require Mr. Hunman's consent because there was no definitive agreement reached that would have modified, waived, or amended any loan documents. And lastly, number four, State Farm had a pre-existing right under the loan documents to accept payment and assign the loan. Nothing in Mr. Hunman's proposed amendment complaint would have cured these same issues over again. For those reasons, I respectfully request that this court affirm the decision of the trial court dismissing the complaint with prejudice. Thank you. Okay, I see no further questions. Mr. Schull, thank you for your argument. Mr. Bachman, do you have any rebuttal? I certainly do, Your Honor. Let me say first with respect to the Section 4 did, the effort to say that Section 4 preserved the pre-existing rights of the parties is a non-issue. The argument there, which is just really boring and nonsensical, is that Section 4 negated the rest of the agreement. That is that you have to ignore any obligations imposed by Section 8Q or Section 8S that would have limited the right to assign not just the mortgage but any of the loan documents. Obviously, the pre-negotiation agreement imposed rights on the imposed obligations and granted rights to the parties. So the notion that Section 4 preserved all pre-existing rights, that is all rights that existed before the pre-negotiation agreement, is a non-starter. The real issue here is, I mean, obviously the pre-negotiation agreement had meaning. The parties all entered into it, as did the grantors and guarantors. The real question is, was there a breach of 8S or 8Q? Or 8S? With respect to 8Q, let me just be clear. The reason that they used the language authority is because some of the people who would have to approve, some of the entities, I should say, who would have to approve the agreement were entities. So specific authority would mean that for the entities, not Mr. Hunman, who's an individual, he would have to say, yes, but it's okay. I mean, that's how you read 8Q. The State Farm will not enter into any agreement and will not consummate any agreement in connection with the loan without the specific authority of all parties. Mr. Bachman, what it says is that State Farm will collect evidence in a form and substance satisfactory to it. Have you alleged that State Farm was not satisfied that the parties with whom it contracted in the loan resolution agreement lacked authority? Well, they couldn't have given their authority. State Farm apparently felt they had it because they entered the agreement and they didn't require any more evidence of that authority. Since this is for State Farm's approval, doesn't State Farm proceeding with that indicate that it's all good on their end? Well, I understand that, Your Honors, but certainly that's not the reading that Mr. Hunman gave to 8Q. But let me move to 8S. Before you do that, I have a question I want to ask. I hope we will get a chance, but the question is this. The trial court in granting the motions expressed under Section 2615 based its decision upon the various documents which have been submitted, all these documents we've been talking about, is that correct? On all the documents that have been submitted? It's not as if the court never heard any evidence. We're not talking about an evidentiary determination here, are we? No, because you didn't allow that. Well, the reason I ask that is with regard to your motion for leave to file an amended complaint and the court's determination that your proposed amended complaint would not correct the deficiencies the court previously found, essentially you're relying on the same documents, aren't you? Yes, but just to be clear, the judge ruled that it was too late for an amended complaint, which I think of the Supreme Court and the appellate courts have said you're almost always entitled to one. In addition, the argument was not raised that we did not allege a good faith and fair dealing, a violation of the duty of good faith and fair dealing. That was not argued. The basis that the judge said we didn't show the defect was the affirmative defense of Section 4, which is not applicable here. Section 4 would not make, that was the court's ruling, that the amended complaint would, I see I'm out of time, but I would ask you to look at the amended complaint because it clearly does cure the defects to the extent there were any in the original complaint. Thank you, Justice Steigman. Did you have a follow-up question? Thank you, Justice Stoddard, I do not. All right, thanks to both of you for your arguments. The court appreciates the arguments and the case is submitted and we now stand in recess.